IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| v. : | **CRIMINAL NO. 24-279** |
| **IVORY S. COUSINS** : | |

**O R D E R**

AND NOW, upon consideration of the defendant's Motion for Inspection of Alleged Crime Scene and the government's response in opposition, it is hereby **ORDERED** that the defendant's motion is **DENIED**.

BY THE COURT:

_____
HONORABLE JUAN R. SANCHEZ
*Judge, United States District Court*
*Eastern District of Pennsylvania*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-279 |
| IVORY S. COUSINS | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR INSPECTION OF ALLEGED CRIME SCENE**

The United States of America, by its undersigned attorneys, David Metcalf, United States Attorney, and Nancy E. Potts, Everett Witherell, and Jessica Rice, Assistant United States Attorneys for the district, hereby files this response in opposition to the defendant's motion for inspection of alleged crime scene. The defendant has requested that the Court order the United States of America to arrange for her to visit the City-operated correctional facility where the crimes in this case are alleged to have occurred. The government opposes the defendant's motion because, in summary, the United States does not control the correctional facility or have any authority to order the Philadelphia Department of Prisons to comply with a site visit request, and the defendant has failed to demonstrate that a site visit is material to preparing her defense. The defendant's motion should therefore be denied.

I.   BACKGROUND

On August 6, 2024, a grand jury sitting in the Eastern District of Pennsylvania returned a four-count indictment charging defendant Ivory Cousins with three counts of deprivation of rights under color of law and one count of falsification of records, all in violation of Title 18, United States Code, Sections 242 and 1519. The indictment alleges that on August 22, 2019, while the defendant was acting as a Philadelphia Department of Prisons ("PDP") correctional

officer at the Curran-Fromhold Correctional Facility ("CFCF"), Cousins deprived an inmate whose initials are D.J. of his constitutional rights by ignoring his need for medical attention after he was brutally assaulted by numerous other inmates, unreasonably pepper spraying D.J., and helping inmates to steal D.J.'s personal belongings after he had been removed from his cell. The indictment also charges that the defendant provided false statements in her written report about the incident, lying about D.J.'s aggressiveness and her attempts to subdue his aggression, and that she recovered a weapon from his bunk, all in an attempt to conceal her unlawful conduct toward D.J. The trial in this case is scheduled for April 7, 2025.

    Among the items provided to the defendant in discovery, and to the Court at its request, are approximately 33 prison surveillance video files that cover the time period 7:00 a.m. to midnight on August 22, 2019, the date of the alleged crimes. The prison surveillance system does not capture sound. The videos from the period 3:00 p.m. to midnight record events in the "A2P1" pod[1], which is the pod where the alleged crimes occurred between approximately 8:00 p.m. and 11:00 p.m. The videos from 7:00 a.m. to 3:00 p.m. show the defendant on her morning shift in a different pod. Each video file shows simultaneous footage from multiple surveillance cameras within the pod. For privacy reasons, there are no surveillance cameras that show the insides of inmate housing cells, that is, the smaller rooms within the pod where the inmates sleep.

    Prior to filing the instant motion, counsel for the defendant requested that the government ask the PDP to accommodate the defendant's site visit request. As is noted in her motion, the

---

[1] In this context, "pod" refers to a unit of the prison that includes inmate housing cells, the common living and dining area the cells are connected to, and the recreational yard that is accessible by a door from the common living/dining area. The pod names indicate which of the four CFCF buildings the unit is in and which unit it is within the building.

government did make that request, Def. Mot. ¶ 12, and the PDP Chief of Staff informed the government that the PDP could not accommodate the request.

## II.   ARGUMENT

The defendant has moved pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure for an order directing the United States to arrange an inspection of "the relevant units" of the CFCF. She has provided no more specifics about the areas she wishes to inspect.

Rule 16 of the Federal Rules of Criminal Procedure provides:

> (a) Government's Disclosure.
>
> > (1) *Information Subject to Disclosure.*
> >
> > > (E) *Documents and Objects*. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> > >
> > > > (i) the item is material to preparing the defense;
> > > > (ii) the government intends to use the item in its case-in-chief at trial; or
> > > > (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). For purposes of the motion at issue here, the crucial language in the rule is that the "buildings or places" must be "within the government's possession, custody, or control." The defendant recognizes this and concedes that "the PDP and CFCF are not agencies or facilities of the Government of the United States." Def. Mot. ¶¶ 13-14.

The defendant acknowledges that "control" means the legal right to obtain something on demand. *Id.* at ¶ 16. Nonetheless, she argues that the United States of America has "'control' of the relevant parts of CFCF" simply because the PDP "cooperated" with the government in its investigation, citing to a press release in which the government credited the PDP with assisting with the investigation of the defendant. *Id.* at ¶¶ 10, 19. The defendant surmises that the PDP

3

"would have given" the government the surveillance videos and will continue to provide the government with other information, such as lists of correctional officers on duty. *Id.* at ¶ 19. That minimal level of cooperation, she contends, is a sufficient basis for this Court to order the United States to force the PDP to permit a site visit.

The argument is absurd. Just because a third party provides the government with records and tangible evidence in support of an investigation does not give the government the right to control physical locations owned and operated by that third party. Another way of stating the defendant's argument would be to say that it is generally understood that any person who, or any entity which, voluntarily provides the government with anything that might be used as evidence in a criminal investigation is also handing over to the government control of their own home, workplace, and other facilities. That illogical statement demonstrates the deep flaws in the defendant's argument.

While the PDP may have voluntarily provided certain tangible materials in support of this investigation, and might continue to do so, it has never ceded any control over its physical facilities to the United States as part of the investigation of this matter. The United States has no more authority to demand a site visit to the CFCF than it has to demand warrantless entry into the home of a witness to a crime who provided a statement to the FBI. None of the cases cited by the defendant support such a ludicrous outcome.

The defendant cites to a 1981 district court opinion from the Eastern District of Wisconsin in support of her argument: *United States v. Kilroy*, 523 F. Supp. 206, 215 (E.D. Wis. 1981). The *Kilroy* decision does not stand for the proposition that the defendant wishes it did. Defendant Kilroy sought a number of different types of documents from the United States pursuant to Rule 16. They included: (1) bank records that the government had in its possession

and intended to rely upon in its case-in-chief; (2) records which were in the defendant's office when he was fired by his employer and which were not in the possession of the United States, and (3) bank records that the government did not have in its possession and did not intend to rely upon. *Kilroy*, 523 F. Supp at 215. The government had agreed to turn over the documents in the first group, and for the third group, the court held that the defendant had equal access to the records via subpoena and should bear the burden of obtaining them if he thought they were relevant. *Id.* As to the second group, while the district court was willing to order the United States to *request* the records from the employer because the employer had been making available to the government all records it requested, the court expressly recognized that, unless served with a subpoena, the employer had no obligation to turn over any of its records to the defendant or the government. *Id.* The court did not treat the government as having control over the employer sufficient to demand or to take the documents (without a subpoena) if the employer did not wish to provide them.

  The defendant also cites to a civil case from the District of Minnesota in support of her argument that Rule 16 "control" simply means the "practical ability" to obtain something. *Prokosch v. Catalina Lighting, Inc*., 193 F.R.D. 633, 636 (D. Minn. 2000). It should be noted that no opinion from the Court of Appeals for the Third Circuit and no decision by a district court in this district has cited to the *Prokosch* case. But even under the loose definition of control used by the *Prokosch* court, here the United States does not have control of the CFCF. The United States has no employees at the facility, does not own the buildings, and has no mechanism by which it can compel a CFCF site visit. The defendant has failed to explain how, exactly, the United States has the practical ability to make the visit happen.

That a reasonable protocol could possibly be agreed upon to accommodate a prison site visit is immaterial. Def. Mot. ¶ 21, citing *DuPonte v. Coyne-Fague*, 384 F. Supp. 3d 225 (D.R.I. 2019). In the *DuPonte* case, the Rhode Island Department of Corrections, the entity that controlled the prison, was a party to the lawsuit. The case has no bearing on the issue of the United States' control of a city prison facility under Rule 16 of the Federal Rules of Criminal Procedure.

Judge DuBois discussed what Rule 16 "possession, custody, or control" means in *United States v. Smukler*, 2018 WL 3632148, Crim. No. 17-563-02 (E.D.Pa. July 31, 2018). In this Federal Election Campaign Act case, defendant Smukler sought to compel the government to produce to him records from a political candidate and a lawyer who he believed had records relating to the candidate's campaign for election. The Court was asked to determine whether records in the candidate's and lawyer's possession, custody, and control should be considered in the possession, custody, or control of the prosecutors. *Smukler*, 2018 WL 3632148 at *2. The defendant argued that the government should be compelled to turn over the records because the candidate and lawyer "'appear[ed] to be cooperating with the prosecution in this case'" and therefore the government had "'the power to secure them.'" *Id*. at *3. The Court rejected that argument. *Id*. Noting that the Court of Appeals for the Third Circuit had not addressed the phrase "possession, custody, or control" in the context of Rule 16, Judge DuBois looked to the Third Circuit *Brady* test for determining whether the government is required to produce materials from others involved in a prosecution. *Id*., citing *United States v. Reyeros*, 537 F.3d 270, 282 (3d Cir. 2008). That test requires a court to examine:

> "(1) Whether the party with knowledge of the information is acting on the government's 'behalf' or is under its 'control'; (2) the extent to which state and federal governments are part of a 'team,' are participating in a 'joint investigation' or are sharing resources; and (3) whether

6

>the entity charged with constructive possession has 'ready access' to the evidence.

*Id.*, quoting *United States v. Norris*, 753 F. Supp. 2d 492, 530 (E.D.Pa. 2010) (quoting *Reyeros* and applying it to Rule 16 discovery). Judge DuBois emphasized that "'the mere fact that documents *may* be obtainable is insufficient to establish constructive possession and instead, there must be a showing that evidence is possessed by people engaged in the investigation or prosecution of the case.'" *Id.*, quoting *Reyeros*, 537 F.3d at 284. Defendant Smukler, like defendant Cousins, failed to show that the third parties from whom he wanted discovery were acting on the government's behalf or were part of the investigation and prosecution team. "The mere fact that a witness has provided information to the Government does not place that person under the control of the Government or on the prosecution team." *Id.*

What the defendant really wants is to force PDP to accommodate a site visit. The defendant has not established that anyone at PDP is part of the federal investigation or prosecution team here. There is no PDP investigator who was or is a case agent. The only case agents are from the FBI.

In this case, the government has conveyed the defendant's site visit request to the PDP, and for entirely sensible reasons, the PDP has denied the request. A visit of any duration would pose both safety and security concerns. CFCF houses hundreds of inmates. Within a single CFCF pod, there can up to approximately 80 inmates. The defendant has requested to visit "the relevant units," whatever that may be. Presumably it includes some or all of pod A2P1, so it may involve displacing at least roughly 80 inmates. PDP personnel would have to move inmates before the inspection and close off certain parts of the facility. They would have to conduct searches of the areas to be visited, both before and after the visit. They would have to provide additional personnel to escort and monitor the visitors. All of these efforts would impose significant

burdens on the PDP, as well as on the inmates who are housed in the affected parts of the facility.

In addition to the fact that the government has absolutely no right to demand the accommodation of a site visit at a facility controlled by an independent third party, the defendant has failed to demonstrate any need. The defendant worked at the facility and is therefore already very familiar with it. She and her counsel are in possession of hours of surveillance videos which show the pod from various angles. Defendant Cousins has failed to explain why and how, given her familiarity with the facility, the nature of the discovery and the charges against her, a site visit to the CFCF is material to preparing her defense. Fed. R. Crim. P. 16(a)(1)(E)(i). The defendant has not met her burden of demonstrating that she has met this second requirement of Rule 16(a)(1)(E), so her motion should fail for this reason, as well.

### III. CONCLUSION

For all of these reasons, the government respectfully requests that the Court deny defendant Cousins' motion for inspection of alleged crime scene.

Respectfully submitted,

DAVID METCALF
*United States Attorney*

*s/ Nancy E. Potts*
NANCY E. POTTS
EVERETT WITHERELL
JESSICA RICE
*Assistant United States Attorneys*

Date:  March 27, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served by me on this date, by email or electronic filing, upon the following person:

>Martin I. Isenberg, Esq., #38762
>Scher & Isenberg, LLC
>1528 Walnut Street, Suite 1100
>Philadelphia, PA 19102
>Phone: (215) 574-2010
>Fax: (856) 782-8825
>misenbergesq@comcast.net

>*s/ Nancy E. Potts*
>NANCY E. POTTS

Dated: March 27, 2025